IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUZANNE E.[1],   No. 3:18-cv-00646-TC

        Plaintiff,

    v.

COMMISSIONER SOCIAL   OPINION & ORDER
SECURITY ADMINISTRATION,

        Defendant.

Mark A. Manning
HARDER WELLS BARON & MANNING, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

    Attorney for Plaintiff

Renata Gowie
US ATTORNEY'S OFFICE – DISTRICT OF OREGON
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1- OPINION & ORDER

Michael S. Howard
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900, MS 221A
Seattle, WA 98104

  Attorneys for Defendant

COFFIN, Magistrate Judge:

  Plaintiff Suzanne E. brings this action seeking judicial review of the Commissioner's final decision to deny Plaintiff's claim for social security disability insurance benefits (DIB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). Because the Administrative Law Judge ("ALJ") failed to provide clear and convincing reasons for discounting Plaintiff's testimony, the Court reverses and remands the decision for further proceedings.

## PROCEDURAL BACKGROUND

  Plaintiff applied for DIB on December 2, 2014, alleging an onset date of October 2, 2014. Tr. 60. Her application was denied initially and on reconsideration. Tr. 60, 91. On December 20, 2016, Plaintiff appeared, with counsel, for a hearing before an ALJ. Tr. 40-59. On February 17, 2017, the ALJ found Plaintiff not disabled. Tr. 29. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

  Plaintiff alleges disability based on fibromyalgia, gastrointestinal bleeding, inflammatory bowel disease, thyroid disorder, asthma, anxiety disorder, depression, hand/wrist problem, myalgia, and myositis. Tr. 62. At the time of the hearing, she was 49 years old. Tr. 73 (stating date of birth). She obtained a GED. Tr. 44. Plaintiff has past work experience as a dietary aide, bartender, pizza deliverer, and shift manager. Tr 45-47.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant

is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 20. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: obesity, fibromyalgia, "degenerative joint disease knee," "degenerative disc disease spine," and depression; however, the impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments. Tr. 20-21.

At step four, the ALJ concluded that before May 1, 2016, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except "[Plaintiff] can occasionally climb, stoop, crouch, kneel, and crawl. She should avoid concentrated exposure to noxious fumes and odors, and workplace hazards. She can perform simple, entry level work in a routine environment involving no interaction with the public." Tr. 23.

With this RFC, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. Tr. 27. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the national economy such as light janitor/housekeeping and assembler. Tr. 28. Thus, the ALJ determined that Plaintiff is not disabled.

4- OPINION & ORDER

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff argues the ALJ erred by (1) relying on the "stale" opinion of non-examining state agency consultant Dr. Davenport when evaluating Plaintiff's fibromyalgia, and (2) improperly discounting Plaintiff's testimony. The Court finds that the ALJ reasonably relied on Dr. Davenport's opinion. However, because the ALJ erred in his consideration of Plaintiff's testimony, the Court reverses the ALJ's decision and remands the case for further proceedings.

**I. The ALJ reasonably relied on Dr. Davenport's opinion.**

Plaintiff alleges she became disabled on October 2, 2014 due to fibromyalgia and a host of physical and mental health impairments. The record contains extensive medical evidence,

from as early as 2012 and through October of 2016. Her administrative hearing was on December 20, 2016.

The ALJ considered the medical evidence in the record and the opinions of five state agency consultants—two medical consultants and three psychological consultants. Tr. 26-27. As for the medical consultants, the ALJ assigned "great weight" and relied heavily on the opinion of Dr. Thomas Davenport. Tr. 26. The ALJ only gave "some weight" to the opinion of the other medical consultant, Dr. Kehrli. Tr. 26.

Dr. Davenport rendered his opinion on August 24, 2015. Tr. 84-86. Therefore, he necessarily did not review any records after that date. Because there was no updated medical opinion at the time of Plaintiff's hearing over a year later, Plaintiff argues that the ALJ erred by failing to order a consultative examination, contact a treating physician, or employ the use of a medical expert to determine the extent of Plaintiff's limitations. Plaintiff argues that the failure to develop the record has resulted in an RFC that is not supported by substantial evidence.

    a. **Dr. Davenport's opinion**

Dr. Davenport reviewed all the medical evidence in the record as of August 24, 2015 and concluded that Plaintiff had the following exertional limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; and stand and/or walk and sit about 6 hours in an 8-hour workday. Tr. 84-85. He also found the following postural limitations: occasional climbing of ramps, stairs, ladders, ropes, scaffolds; and occasional stooping, kneeling, crouching, and crawling. Tr. 85. Finally, he assigned the following environmental limitations: avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. Tr. 85-86. Dr. Davenport's environmental limitations were based on "2/2 FMS, COPD." Tr. 86.

Dr. Davenport included the following "additional explanation" notes with his RFC recommendation:

> There is an abundance of MER regarding multiple allegations of joint pain. Exams always show normal functioning, as well as normal x-rays. The clmt. is obese (BMI 32.5) with no evidence of OA or joint laxity. She has normal ROM throughout, some mild OSA not requiring CPAP, and no lab evidence of RA. MRI revealed mild R knee synovitis and no other abnormalities. She continues to smoke. There is no medical need for a cane. A light RFC is reasonable based on the 8/14 diagnosis of FMS.

Tr. 86. The ALJ assigned great weight to Dr. Davenport's opinion because "he is a medical doctor, who had the benefit of reviewing medical records from several treating sources and had a longitudinal picture of the claimant's health." Tr. 26.

### b.  Medical evidence from August 24, 2015—December 20, 2016

The following medical evidence is in the record but was not considered by Dr. Davenport.

On August 26, 2015, Plaintiff was seen for leg pain, including right groin tenderness; other chronic pain; blood-streaked sputum; and wheezing. Tr. 1696. On October 2, 2015, Plaintiff was diagnosed with a "likely" groin pull, which was improving since its onset. Tr. 1718. The doctor noted "muscle tightness/pulling with all movement of hip except extension which reproduces the pain. Gait is at baseline." Tr. 1720.

Later that month, she was seen for dizziness, nausea, and diarrhea. Tr. 1749. Her treating physician, Dr. Phelps, made several notations suggesting difficulty in accurately diagnosing and assessing Plaintiff's problems. Tr. 1749. For example, Dr. Phelps wrote that Plaintiff had an "unconfirmed" history of crohn's colitis and Dr. Phelps was "unsure what to make of" Plaintiff's inconsistent and exaggerated reported tremor. Tr. 1749. As to Plaintiff's polyarthralgia and myalgia, Dr. Phelps wrote, "This is baseline for pt, unclear etiology. Psychosomatic? More and

more a consideration for me as an exhaustive w/u has been neg." Tr. 1749. Dr. Phelps referred Plaintiff to a specialist. Tr. 1750.

Plaintiff was seen by Dr. William Bennett on November 12, 2015 for an evaluation of chronic diarrhea, nausea, and vomiting. Tr. 1512. Plaintiff reported continuing pain, worsening fibromyalgia, and frequent falls. Tr. 1512. The following week, she had a colonoscopy, which was normal. Tr. 1516.

On November 21, 2015, Plaintiff was seen for "a variety of new symptoms"—numb fingers and feet, painful wrists, dizziness, blurry vision, headaches, and shooting pain in her arms and legs. Tr. 1746. Her gait was antalgic, favoring her right leg and indicating pain her hip. Tr. 1747. She walked with a limp. Tr. 1747. Plaintiff was seen by Dr. Phelps on December 4, 2015, and she complained of chronic nausea, epigastric pain, and ongoing joint pain. Tr. 1760-61. Examination revealed abdominal tenderness with deep palpitation and tenderness with palpitation of the joints in her hands. Tr. 1762.

On December 22, 2015, Plaintiff was seen at the Revitalize Wellness Center, based on a referral by Dr. Phelps. Tr. 1471. Plaintiff stated that immobility makes her pain worse and so she tries to walk for exercise every day. Tr. 1471. She uses a cane some of the time and has frequent falls, especially when she does not use the cane. Tr. 1471. She stated, "they want me to use a walker, but I'm not ready for that." Tr. 1471. She is no longer able to do the outdoor activities she used to enjoy, like camping and fishing. Tr. 1472. She was recommended for a program at Revitalize Wellness Center. Tr. 1473. She was "especially interested in yoga as gentle movement/stretching is helpful for her." Tr 1473. Plaintiff engaged in a 10-week pain management class from January through March of 2016. Tr. 1475-1485.

On January 21, 2016, Plaintiff resumed mental health counseling. Tr. 1506. She reported extreme depression, abnormally high panic attacks, loneliness, anger, sadness, and a lack of will to live. Tr. 1506.

On February 16, 2016, Plaintiff was seen at The Oregon Clinic, Neurology. Tr. 1491. Her symptoms of numbness, tingling, and discomfort persisted in her extremities. Tr. 1491. Her prior nerve conductions were unremarkable. Tr. 1491. She walked with a 4-point cane. Tr. 1492. On March 7, 2016, her symptoms were unchanged. Tr. 1489.

An aortoiliac duplex ultrasound in May of 2016 revealed "velocity acceleration" suggesting "50% to 70% diameter reduction." Tr. 1610. The doctor noted that Plaintiff walked with a cane, was able to walk only one block, and her pain improved with one minute of sitting. Tr. 1654. Her pain was managed with Tylenol #3. Tr. 1654. The same month, she was assessed by Dr. Phelps with pain in her lower extremity, headaches, and atherosclerosis. Tr. 1841. Plaintiff complained of worsening pain, increased cramping, random numbness, bout of sciatica, and more frequent and intense headaches. Tr. 1842. She used a cane to ambulate and was slow to get on the examination table. Tr. 1843. There was tenderness in her right greater trochanger. Tr. 1843.

On June 2, 2016, Dr. Phelps treated Plaintiff for right foot pain, muscle cramping, hypokalemia, and bilateral low back pain. Tr. 1854. Later that month, Dr. Phelps saw Plaintiff again for lower back pain. Tr. 1865. Plaintiff was stretching with yoga daily but could only tolerate the pain of walking for two minutes. Tr. 1865.

In July of 2016, Plaintiff was seen for extremity and other pain and numbness, which was "not well accounted for." Tr. 1876. She walked laboriously with a cane, and standing up from a sitting position was difficult and painful. Tr. 1877. The doctor wrote, "Despite quite extensive

9- OPINION & ORDER

workup, I have not identified a neurologic cause for her symptoms. Skin biopsy excludes a peripheral neuropathy. I am pleased the rheumatology consultation is pending—fibromyalgia or other may be applicable." Tr. 1877. Plaintiff also saw Dr. Phelps again, who noted her headaches and chronic pain. Tr. 1880. Two days later, on July 20, 2016, Plaintiff's back pain was worse. Tr. 1892. She was slow to move and change positions, and unable to do a full forward bend. Tr. 1892. Plaintiff flinched with the doctor's exam and had tenderness along her chest wall. Tr. 1893. Later that month, she was seen again, and her rheumatologist added sulfasalazine for synovitis. Tr. 1903. She requested a Toradol shot. Tr. 1904. She ambulated with a cane. Tr. 1905.

On August 29, 2016, Plaintiff's CT scan revealed "severe aortoiliac disease with at least near occlusion of the right CIA and plaque in the left as well." Tr. 1644. On September 2, 2016, Plaintiff had a "stable neuro exam" although she exhibited an altered gait with use of a cane. Tr. 1916. She suffered a concussion. Tr. 1916 On September 15, 2016, Plaintiff underwent an abdominal aortogram and aortoiliac angioplasty and stenting. Tr. 1610.

On September 22, 2016, Plaintiff was seen again by Dr. Phelps, who noted her complaints of a lump in her chest, hot flashes, and fibromyalgia with chronic pain. On September 28, 2016, Plaintiff reported "resolution of [her] leg symptoms with minimal residual leg pain" following the aortoiliac stenting. Tr. 1624. On October 13, 2016, Plaintiff had a follow-up appointment from her aortoiliac stenting. Tr. 1606. Plaintiff reported that she was doing well. Tr. 1606. She was using a walker and was unsure why she had fallen several times. Tr. 1606. The doctor opined that she was "doing well from a vascular perspective." Tr. 1607.

On October 28, 2016, Plaintiff was examined by Dr. Andrew Shinabarger, who found that "[s]ensation is intact to light touch to all nerve distributions bilateral. Negative tinel's sign of

the tibial nerve bilaterally." Tr. 1677. As for Plaintiff's musculoskeletal examination, Dr. Shinabarger wrote: "5/5 strength of all major muscle groups bilateral. No pain with ankle, subtalar, or first metatarsophalangeal joint range of motion bilateral. Tenderness to the arch of the foot and at the plantar medial calcaneal tubercle bilaterally. No achilles tendon pain. No pain with side to side compression of the calcaneus. Decreased ankle joint range of motion bilaterally with the knee extended and knee flexed. No gross deformity noted." Tr. 1677. He diagnosed Plaintiff with plantar fasciitis and chronic heel pain. Tr. 1677.

### c. Failure to develop the record

Plaintiff argues that because Dr. Davenport did not review medical records after August 24, 2015, he did not consider the "most crucial medical evidence" that evinced the "deteriorating nature of Plaintiff's impairments." Pl.'s Memo. at 29, ECF 12. Plaintiff does not explain how any of the medical evidence after August 24, 2015 demonstrates her deteriorating condition, nor does she point to any specific records that would compel a different RFC from what Dr. Davenport recommended. Therefore, Plaintiff's argument is, in essence, an appeal to this Court to find a *per se* error because the ALJ relied on an old, or "stale," medical opinion. The Court declines to do so.

Plaintiff cites one case in support of her argument: *Arriaga v. Berryhill*, No. CV-16-0755-TUC-LCK, 2018 WL 1466234 (D. Ariz. Mar. 26, 2018). In *Arriaga*, the ALJ based the RFC on the opinions of non-examining physicians who had conducted their reviews in January and April of 2014—approximately a year before the administrative hearing. *Id.* at *6. During that year, the claimant's conditions had changed dramatically. *Id.* In November of 2013, Arriaga began experiencing significant anger and depression. *Id.* In July of 2014, he began reporting auditory and visual hallucinations. *Id.* In 2014, he had documented developing mental health

symptoms, including psychosis. *Id.* The ALJ himself noted at the hearing "that the record he was looking at was a 'different animal' than had been reviewed in the earlier administrative proceedings." *Id.* The court characterized the opinions of the non-examining physicians as "stale" because they "had not seen the scope of Arriaga's 2014 mental health records documenting his developing symptoms." *Id.*

The court in *Arriaga* did not, however, rule that the ALJ's reliance on the "stale" opinions was grounds for reversing the ALJ's decision. Instead, the court reversed the ALJ's decision because the ALJ rejected a nurse practitioner's testimony without a germane reason, rejected the opinion of an examining psychologist without explanation, and discounted Arriaga's credibility without clear and convincing reasons. *Id.* In explaining its decision to reverse and remand for further proceedings, the court noted that the ALJ "*may* need to obtain a current functional review by a consulting examiner" instead of relying on the "stale" opinions of non-examining physicians. *Id.* (emphasis added) The court did not hold that reliance on "stale" opinions is a *per se* reason to reverse an ALJ's decision.

However, as in *Arriaga*, the Court remands this case for further proceedings. Here, the ALJ erred by discounting Plaintiff's credibility without clear and convincing reasons. On remand, after the ALJ properly evaluates Plaintiff's testimony, he will likely need to obtain a current functional review to assess the impact of any deterioration of Plaintiff's condition. Any such functional review should take into account the "unique characteristics of fibromyalgia" in disability determinations. *Revels v. Berryhill*, 874 F.3d 648, 652 (9th Cir. 2017) (explaining that fibromyalgia is "diagnosed entirely on the basis of the patients' reports of pain and other symptoms"). Additionally, the ALJ may need to obtain updated testimony from a vocational expert to account for Plaintiff's limitations.

## II. The ALJ erred in his evaluation of Plaintiff's testimony.

Plaintiff contends that the ALJ erred in discounting her testimony about her impairments. The Court agrees.

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted). *See also Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony").

The ALJ stated that "the medical record does not support the severity of the claimant's alleged physical limitations." Tr. 24. However, the ALJ does not cite to a single medical record that contradicts Plaintiff's allegations of her physical limitations. Therefore, the ALJ's decision to discount Plaintiff's testimony because it is unsupported by the medical record is not a clear and convincing reason. *See, e.g. Burrell v. Colvin,* 775 F.3d 1133, 1139 (holding that the ALJ

committed legal error because he "never connected the medical record to Claimant's testimony" nor made "a specific finding linking a lack of medical records to Claimant's testimony about the intensity of her . . . pain").

The only evidence the ALJ uses to discount Plaintiff's testimony is evidence of her activities of daily living. Tr. 25. The ALJ cites four pieces of Plaintiff's testimony that allegedly are contradicted by her activities of daily living: 1) Plaintiff is obese; 2) Plaintiff alleges she has fibromyalgia, which causes her to experience pain through her body and limits her ability to walk; 3) Plaintiff alleges she has a joint condition in her knees that limits her ability to stand, walk, lift, and carry objects; and 4) Plaintiff alleges she experiences severe back pain, which limits her ability to stand, walk, lift, and carry objects. Tr. 25.

For each piece of testimony, the ALJ cites the same activities of daily living to allege a conflict with the testimony:

- Plaintiff "noted she cleans her home, cooks meals, reads books, and washes laundry."
- Plaintiff "reports that she shops in stores and on her computer for groceries and presents."
- Plaintiff "reports that she spent a whole day taking her mother to the fair and was tired after that."

Tr. 25. The ALJ cites Plaintiff's responses in her Adult Function Report for each of these activities.[2]

---

[2] Defendant cites other activities of daily living that it contends conflict with Plaintiff's testimony regarding her impairments. *See* Def.'s Br. 9, ECF 13. However, this Court's review is limited to the reasons provided by the ALJ, and the Court will not consider the agency's *post hoc* rationalizations for the ALJ's conclusions. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (reiterating that the court is constrained to review the reasons the ALJ asserts); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

14- OPINION & ORDER

A close look at the Adult Function Report reveals a more nuanced description of Plaintiff's activities than the ALJ's characterization. In response to a question regarding what she does from when she wakes up until she goes to bed, Plaintiff wrote:

> Wake up – Rub legs + feet so I can walk – stretch neck and back – Take meds, check calendar for apptmts. Dr. Apptmts. Pick which room I can clean if I can, morning nap, continue to clean same room, afternoon nap, decide if I can cook dinner or not, eat, stretches, bed if I am lucky.

Tr. 192. In response to a question about whether she prepares her own meals, Plaintiff indicated both "yes" and "no." Tr. 193. She explained that when she does prepare food, it was sandwiches, salad, one-pan meals, or simple meals. Tr. 193. She does this 4-5 times a week, and it takes a couple of hours. Tr. 193. However, she "rarely will fix a complete meal" and never prepares a complicated meal without help. Tr. 193. Further, she wrote: "There are many days where confusion or anxiety prevents me from cooking. I forget to pull meat out of freezer or how to cook certain meals." Tr. 193. While Plaintiff did state that she cleans and does laundry, she explained that these activities depend on how much she is hurting and, if she needs help, she can call her daughters. Tr. 194. Similarly, while she stated that she shops for groceries and presents in stores and on the computer, she also wrote that she does not go out often and, when she does, she has her children drive her because sometimes she gets so confused that she gets lost. Tr. 194-95. Finally, as to the ALJ's reference to Plaintiff's trip to the fair, the chart note from Plaintiff's physical therapy on July 20, 2015 states:

> Little sore today. Had a set back. Brought mother to fair and was there all day. Didn't expect that she would want to be there all day—I was prepared for up to 4 with a little suffering. I have been recovering in bed all weekend. Can't wake up. Pain location: both feet, back hips.

Tr. 1449.

The Court fails to see, and the ALJ does not explain, how any of the cited portions of Plaintiff's testimony conflict with her activities of daily living as described in her Adult Function Report. If anything, the descriptions of her activities of daily living corroborate Plaintiff's testimony regarding her fibromyalgia and pain. The ALJ acknowledged that Plaintiff's fibromyalgia was a severe impairment. Tr. 20. The symptoms of fibromyalgia are known to "wax and wane," with the result that patients have good days and bad days. *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). The ALJ must, necessarily, "consider a longitudinal record whenever possible," when determining the RFC of a patient with fibromyalgia. *Id.* Plaintiff's activities are consistent with her allegations of pain limiting her ability to stand, walk, lift, and carry objects. Thus, the ALJ erred by failing to provide clear and convincing reasons to discount Plaintiff's testimony.

### III. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). As in *Arriaga*, while Plaintiff requests an award of benefits, she fails to set forth the basis for such a remand. Instead, her primary argument is that the ALJ was required to further develop the record and obtain an updated medical opinion as to Plaintiff's limitations, both of which lead to a conclusion that remanding for further proceedings would be appropriate.

As discussed, the ALJ erred in his evaluation of Plaintiff's statements concerning Plaintiff's fibromyalgia-related limitations. On this record, however, the Court cannot conclude that further proceedings would serve no useful purpose. The ALJ should have the opportunity to properly evaluate Plaintiff's symptom allegations and resolve any ambiguities concerning Plaintiff's fibromyalgia. After the ALJ properly considers Plaintiff's testimony, he will likely

need to obtain a current functional review by a consulting examiner and additional testimony from a vocational expert.

## CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this 9th day of April 2019.

 s/Thomas M. Coffin
THOMAS M. COFFIN
United States Magistrate Judge

17- OPINION & ORDER